McDonald, judge.
We review Brasseria La Capannina, Inc. v. Goodman, 579 So.2d 193 (Fla. 4th DCA 1991), in which the district court held section 83.12, Florida Statutes (1989), unconstitutional on its face because it violates due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We reverse the decision of the district court and hold the statute *1246 constitutional because, as construed by this opinion, it complies with due process requirements.
On May 16, 1990, Goodman, landlord of the premises in which Brasseria La Capan-nina, Inc., operated a restaurant, filed a two-count verified complaint for breach of lease and for distress writ against Brasse-ria alleging that Brasseria had breached its lease agreement by failing to pay timely rent and other charges due. The complaint further alleged that Brasseria owed Goodman $24,547, plus six percent of the gross sales and applicable sales tax for March and April, and that Brasseria was also in breach of a letter agreement dated October 24, 1989, under which it owed an additional $17,306 in accrued rent delinquency.
After an ex parte hearing, also on May 16, 1990, the trial court issued the distress writ pursuant to sections 83.11 and 83.12, Florida Statutes (1989). That same day, the sheriff served the distress writ on Brasseria. Two days later, on May 18, the trial court held an emergency hearing in response to Brasseria's motion seeking to have the writ modified to exclude food and alcohol so that the restaurant could continue in business. The trial court denied the motion to modify and at a second emergency hearing on the same afternoon, set the amount of bond that Brasseria could give in order to replevy the distrained property. Brasseria was unable to obtain the required bond and the writ remained in effect.
On June 28, 1990, the trial court held a hearing on Brasseria’s motion to dissolve the distress writ and denied the motion, rejecting arguments that the statute was unconstitutional. On July 10, 1990, in the related eviction action, the county court entered an order evicting Brasseria from the premises. On appeal, the district court reversed, holding section 83.12 facially unconstitutional because it provides no discretion to the presiding judge to deny a request for a distress writ and directs that the judge shall issue the writ upon the filing of a verified complaint alleging a prima facie case under the statute. The court went on to conclude that the statute fails to require that the judge make an impartial factual determination as mandated by Phillips v. Guin & Hunt, Inc., 344 So.2d 568 (Fla.1977).
In Phillips we held sections 83.11, 83.12 and 83.14-.19, Florida Statutes (1975), unconstitutional as violative of the Due Process Clause in the United States Constitution. Relying upon the requirements for due process set forth by the United States Supreme Court in Mitchell v. W.T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974) and North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), we held the prior writ for distress statute unconstitutional because it did “not provide the right to a hearing promptly after the issuance of the writ nor even before the property is levied upon” and did “not provide for issuance of the writ by a judicial officer rather than a clerk of court or, in lieu thereof, by a clerk who makes an independent factual determination that the statute has been complied with.” 344 So.2d at 572.
In Mitchell the United States Supreme Court addressed the issue of whether a prejudgment deprivation of property ordered ex parte and without prior notice or opportunity for a hearing violated the Due Process Clause of the Fourteenth Amendment. In sustaining a Louisiana sequestration statute, the Court pointed out that the creditor also had an interest in the seized property[1] and established a balancing test in which the creditor's interests in protecting the property from concealment or disposal is weighed against the debtor’s interest in avoiding a wrongful or arbitrary deprivation of the property. 416 U.S. at 604, 94 S.Ct. at 1898. The Court held that preseizure notice and hearing was not required so long as the statute contained sufficient procedural safeguards protecting the debtor’s interest. Id. at 611-12, 94 S.Ct. at 1902. In Phillips, we summarized Mitchell and North Georgia as setting forth the following requirements: (1) the *1247 writ shall not issue without judicial authorization; (2) the writ may issue only upon the allegation of specific facts; (3) the party seeking to invoke a writ is required to post a bond to guarantee the tenant’s interests; (4) the tenant has the opportunity to obtain an immediate hearing to dissolve a writ; and (5) there is the opportunity for a prompt hearing on the merits, though not necessarily a predeprivation hearing. 344 So.2d at 571.
In 1980, the legislature amended the distress for rent statute in an attempt to comply with the due process requirements as set forth in Phillips,[2] Section 83.11 was amended to require that the complaint be verified and that it allege the name and relationship of the defendant to the plaintiff and how the obligation arose,[3] and section 83.12 was amended to require that the distress writ be issued by a judge as opposed to a clerk of court.[4]
In Phillips, this Court held that
it is constitutionally imperative that a writ issue only after an impartial factual determination is made concerning the existence of the essential elements necessary for issuance of the writ. Consequently, a writ must be issued by a judicial officer based upon a prima fa-cie showing rather than pro forma by the clerk of court, unless the initial pleading is made under oath to a clerk who makes an independent factual determination that the requirements of the statute have been complied with.
344 So.2d at 574 (emphasis added). The requirement set forth in Phillips was intended to prevent a distress writ from automatically issuing merely upon the filing of an unverified complaint. Due process requires that there first be some impartial factual determination that the facts alleged in the complaint are sufficient to set forth a prima facie case under the statute. Contrary to Brasseria’s assertion, neither due process, nor Phillips, requires that a judicial officer look beyond the facial sufficiency of the complaint and weigh the parties’ varying interests before the writ may issue. Such a task would be difficult to achieve in an ex parte proceeding.
The issuance of a distress writ is a preliminary procedure created to prevent a tenant from impairing the landlord’s security. The tenant has control and possession of the property at interest, and the landlord faces the risk that the buyer will conceal or transfer the property which its lien covers. See Mitchell, 416 U.S. at 608-09, 94 S.Ct. at 1900. “The danger of destruction or alienation cannot be guarded against if notice and a hearing before seizure are supplied. The notice itself may furnish a warning to the debtor acting in *1248 bad faith.” Id. at 609, 94 S.Ct. at 1901. Thus, we hold that the factual determination required by a judge before he or she may issue a distress writ consists of determining whether a verified complaint meets the requirements of the statute and whether it alleges a prima facie case. We further construe the phrase “[a] distress writ shall be issued by a judge” in section 83.12 as merely setting forth the individual with the authority to issue a distress writ and not as placing a restriction upon a judge’s discretion to make the required determination as set forth above.
The 1980 amendment to the statute also added section 83.135, granting tenants the right to motion for dissolution of the writ at any time and requiring a hearing be held on the motion prior to the sheriff being authorized to levy on the distrained property.[5] In a majority of cases, this provision would be sufficient to satisfy the requirement that there be an opportunity for an immediate postseizure hearing. However, in some cases, such as the instant case, in which a writ completely prevents a tenant from conducting its business, the mere issuance of the writ may substantially deprive the tenant of its property interest, even though the sheriff has yet to levy on the property. See Department of Law Enforcement v. Real Property, 588 So.2d 957, 964 (Fla.1991) (“temporary or partial impairments to property rights are sufficient to merit due process protection”).
In such cases, the statute may be unconstitutionally applied because, while the court would be open to entertain the tenant’s motion to dissolve the writ, it would not be required to hear the motion until the day upon which the sheriff was authorized to levy upon the property. In Unique Caterers, Inc. v. Rudy’s Farm Co., 338 So.2d 1067, 1071 (Fla.1976), this Court held that merely keeping the court available to hear dissolution motions did not meet the requirement of an opportunity for an immediate postseizure hearing. It is imperative that the requirement for an immediate hearing cut “to a bare minimum the time of creditor- or court-supervised possession,” Mitchell, 416 U.S. at 610, 94 S.Ct. at 1901. Therefore, in cases in which a writ has the effect of depriving an entity of its ability to continue in business, thus constituting an immediate and substantial deprivation of property, an adversarial hearing on a tenant’s motion to dissolve the writ must be provided as soon as reasonably possible and all relevant matters put forth by the tenant going to the issues of modifying or dissolving the writ shall be considered.[6] Further, at such hearing the landlord will have the burden of providing probable cause that the writ is justified.[7]
Brasseria asserts that the statute was unconstitutionally applied in the instant case because the writ did not simply maintain the status quo, as is the goal of the statute, but actually closed the business.[8] *1249 Thus, Brasseria concludes that the resulting injunction against the operation of the restaurant was not authorized by statute and amounted to a deprivation of property without due process. We agree that the issuance of a writ enjoining the selling of inventory, which effectively closes the doors of a business, is a substantial taking of property subject to the requirements of due process as set forth in Mitchell and Phillips. However, we believe those requirements are satisfied by the procedures set forth in the instant statute as construed by this opinion and, specifically, as the statute was applied to the instant case.
In the instant case, the trial court provided ample opportunity for immediate hearings on both Brasseria’s motion to modify the writ and its motion to dissolve the writ. Two hearings, one on Brasseria's motion to have the writ modified and the other to set the amount of bond necessary for Brasseria to replevy the distrained property, were held within two days of the writ’s issuance. The trial court on several occasions made it clear to Brasseria that it could have a full evidentiary hearing on its motion to dissolve the writ any time it wished. Further, during the two hearings on May 18,1990, the trial court heard arguments from Brasseria concerning matters such as whether there was alternative security for the amounts owed and the need to include the food and alcohol among the property distrained.[9] Clearly, the requirements that there be an opportunity for an immediate postseizure hearing and that there be judicial supervision throughout the distress writ process were met in the instant ease.
As explained by the Supreme Court in Mitchell, prejudgment remedies involve weighing the respective interests of the parties. In cases involving prejudgment remedies “[t]he reality is that both seller and buyer [have] current, real interests in the property.... Resolution of the due process question must take account not only of the interests of the buyer of the property but those of the seller as well.” Mitchell, 416 U.S. at 604, 94 S.Ct. at 1898. While we recognize the severity of a remedy which results in the closing of a business before a hearing on the merits occurs, we must balance the effect of the remedy against the landlord’s need to protect its security. The tenant has possession of the property and there is a real danger that a bad faith tenant could impair the landlord’s interests. However, when the state provides for prejudgment remedies to protect the interests of a creditor or landlord, it must also ensure that certain safeguards are present to protect the interests of the alleged debtor or tenant.
The amended version of chapter 83 provides significant and adequate procedural safeguards which protect the tenant’s interests, while also protecting the landlord’s security. It, like the Louisiana statute in Mitchell, “seeks to minimize the risk of error of a wrongful interim possession” and protects the tenant’s “interest in every conceivable way,” except by allowing it to dispose of the property in the interim period between the issuance of the writ and the post-seizure hearing. Mitchell, 416 U.S. at 618, 94 S.Ct. at 1905. In light of the procedural safeguards placed into the statute by the 1980 amendments, we determine the statute provides an adequate compromise between the conflicting interests of the parties while preserving the tenant’s due process rights.[10]
Accordingly, we reverse the district court’s decision and hold section 83.12 constitutional as construed by this opinion to comply with due process requirements. We further hold that the distress.for rent *1250 statute was constitutionally applied to the facts of this case.
It is so ordered.
SHAW, C.J., and OVERTON, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.

. Under section 83.08, Florida Statutes (1989), Brasseria’s failure to make the lease payments granted Goodman a lien interest in the property located on the leased premises.

. Ch. 80-282, §§ 1-4, Laws of Fla.

. Ch. 80-282, § 1, Laws of Fla. The amended subsection reads as follows:
Distress for rent; complaint. — Any person to whom any rent or money for advances is due or his agent or attorney may file an action in the court in the county where the land lies having jurisdiction of the amount claimed, and the court shall have jurisdiction to order the relief provided in this part. The complaint shall be verified and shall allege the name and relationship of the defendant to the plaintiff, how the obligation for rent arose, the amount or quality and value of the rent due for such land, or the advances, and whether payable in money, an agricultural product, or any other thing of value.
§ 83.11, Fla.Stat. (1989).

. Ch. 80-282, § 2, Laws of Fla. The amended subsection reads as follows:
Distress for rent; form of writ. — A distress writ shall be issued by a judge of the court which has jurisdiction of the amount claimed. The writ shall enjoin the defendant from damaging, disposing of, secreting, or removing any property liable to distress from the rented real property after the time of service of the writ until the sheriff levies on the property, the writ is vacated, or the court otherwise orders. A violation of the command of the writ may be punished as a contempt of court. If the defendant does not move for dissolution of the writ as provided in s. 83.135, the sheriff shall, pursuant to a further order of the court, levy on the property liable to distress forthwith after the time for answering the complaint has expired. Before the writ issues, the plaintiff or his agent or attorney shall file a bond with surety to be approved by the clerk payable to defendant in at least double the sum demanded or, if property, in double the value of the property sought to be levied on, conditioned to pay all costs and damages which defendant sustains in consequence of plaintiffs improperly suing out the distress.
§ 83.12, Fla.Stat. (1989).

. Ch. 80-282, § 4, Laws of Fla. The added subsection reads as follows:
The defendant may move for dissolution of a distress writ at any time. The court shall hear the motion not later than the day on which the sheriff is authorized under the writ to levy on property liable under distress. If the plaintiff proves a prima facie case, or if the defendant defaults, the court shall order the sheriff to proceed with the levy.
§ 83.135, Fla.Stat. (1989).

. See Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991) (Florida Contraband Forfeiture Act construed to be facially constitutional so long as applied consistent with the minimum due process requirements of the Florida Constitution).

. In Unique Caterers, Inc. v. Rudy's Farm Co., 338 So.2d 1067, 1071 (Fla.1976), we set forth the requirement that in prejudgment attachment cases, due process requires there be "an immediate post-seizure hearing, at which the debtor has an opportunity to be heard and at which the creditor ‘would be required to prove at least probable cause’ for the attachment.” 338 So.2d at 1070 (quoting North Ga. Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 607, 95 S.Ct. 719, 722-23, 42 L.Ed.2d 751 (1975)).

.Brasseria also suggests this Court follow Sniadich v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), in which the United States Supreme Court held that presei-zure hearings were required before an employee’s wages could be garnished. However, in Mitchell the Court distinguished the garnishment statute in Sniadich as involving a "specialized type of property" subject to an increased risk of abuse by creditors without valid claims. 416 U.S. at 614-15, 94 S.Ct. at 1903-04. Because *1249 the same distinguishing factors exist with respect to the instant statute, the requirement of a preseizure hearing as set forth in Sniadich is not applicable to the instant case.

. Although Brasseria asserts that the $300,000 in furniture and fixtures contained in the restaurant was more than sufficient to cover Goodman’s claims without also restricting the sale of food and alcohol, all of the evidence in the record indicates the furniture and the fixtures were owned by Goodman.

. We approve the observations made in footnote 7 of Comcoa, Inc. v. Coe, 587 So.2d 474, 479 (Fla. 3d DCA 1991).